The **DIXIE–DREDGE CORPORATION**

v.

**AMERICAN MARINE & MACHINERY CO., Inc., et al.**

**Civ. No. 3428.**

United States District Court
M. D. Tennessee,
Nashville Division.

Jan. 6, 1966.

---

Arthur G. Gottlieb, John Cyril Malloy, Miami, Fla., for plaintiff.

Walter C. Leaver, Jr., John M. Barksdale, Barksdale, Hudgins, Leaver, Gilbert & Frank, and Harrington A. Lackey, Nashville, Tenn., for defendants.

GRAY, District Judge.

This is an action for the alleged infringement of patents No. 3,005,273 and No. Des. 188,477 and for alleged unfair competition. The issues of the validity and infringement of the patents were tried by the court, sitting without a jury, on August 25, 1965, and the case was taken under advisement.

Patent No. 3,005,273 is a mechanical patent, and patent No. Des. 188,477 is a design patent, for a portable hydraulic dredge. These patents were originally issued to John H. Milne but were assigned by him to Arthur Gottlieb and Lewis Vanech. Gottlieb and Vanech sub-sequently assigned the patents to the plaintiff. The plaintiff contends that dredges manufactured by the defendant infringe on its patents; the defendant argues that the patents are invalid and, in the alternative, that there is no infringement.

Both litigants manufacture portable dredges employing an hydraulic "reducer" or "motor" which operates underwater. This motor is mounted on a "ladder" or metal frame that extends downward from the bow of the dredge and that supports at its terminus a cutting apparatus which loosens subaqueous rock or soil. This loosened material is removed by a suction pipe that extends, within the framework of the ladder, from the cutting head to the dredge's hull. Mounting the motor underwater permits a shorter drive shaft to be used and, in addition, utilizes the weight of the motor in the operation of the cutting head.

The hydraulic motor mounted to operate underwater and the other components described in Milne's patents were previously known to the dredge manufacturing art. The file wrapper of patent No. 3,005,273 and the testimony of the plaintiff's patent expert establish that the only novel feature, and therefore the only patent-protectable feature, of the Milne dredge is the positioning of the motor, cutting head, suction pipe and ladder in a manner in which (1) the center of the cutting head lies substantially on the axis of the ladder, thereby minimizing the ladder-twisting torque of the cutting head, (2) the axes of the motor and cutting head are angled at about 20° to the axis of the ladder whereby the motor may lie close to and protectively above the end of the ladder while still leaving room for (3) protective location of the suction pipe within the side framework of the ladder.[1]

The evidence shows that the motor, cutting head, suction pipe, and ladder are positioned on the dredges manufactured by the defendant in a manner substantial-

---

[1]. The court feels there is a question whether the positioning of the components in the manner described is sufficiently inventive to justify the patent monopoly. The court does not make specific findings in this regard, however, because the patents are invalid for other reasons hereinafter discussed.

ly similar to that described in the Milne patents. The defendant, however, asserts that these patents are invalid because more than one year prior to the respective dates of the patent applications: (1) dredges substantially similar in all respects to the dredge described in the patents were manufactured and sold in this country by John Milne, (2) such dredges were in regular use in this country, and (3) such dredges were described in printed publications.

▮ In order to prevent the undue extension of a patent monopoly, Congress has conditioned the validity of a patent upon the requirement that the patent be applied for within one year after the invention is placed into use or described in a printed publication. This requirement is embodied in 35 U.S.C. § 102 which provides in relevant part as follows:

"A person shall be entitled to a patent unless—

" *   *   *

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, *   *   *.

" *   *   *."

Milne's application for the design patent was filed December 3, 1958. His application for the mechanical patent was filed June 15, 1959. The evidence establishes that in late 1955 or early 1956, Milne manufactured dredges similar in many respects to the dredge he subsequently patented. The ladder used on these earlier dredges, however, consisted merely of a rigid, reinforced suction pipe instead of the "A-frame" structure described in the patents.[2] Since the ladder design and the related mounting of the motor, cutting head and suction pipe are the critical elements of the patents, it is doubtful that the sale and use of the dredges embodying the earlier ladder design would invalidate the patents. Milne,

however, abandoned the earlier ladder design in early 1956, and for several years prior to the filing of his patent applications he manufactured and sold, at the rate of approximately one per month, dredges incorporating the ladder design described in the patents. One of these dredges was purchased by Curcie Bros., Inc., in June, 1956. This dredge had an "A-frame" ladder on which the motor, cutting head and suction pipe were mounted and positioned in the manner described in the patents. Another dredge of the later patented ornamental and mechanical design was delivered to Polk County, Florida, in December, 1957, the bid being submitted October 16, 1957, and the County's purchase order being issued November 8, 1957.

The plaintiff took the position that the dredges sold to Curcie Bros., Inc., and Polk County were merely experimental models, but it failed to support this position with any evidence. The defendant, on the other hand, proved that Curcie Bros., Inc., entered into a chattel mortgage soon after purchasing the dredge in which it warranted that it owned the dredge "free and clear of all *   *   * emcumbrances of every kind and nature whatsoever," that the purchase of the dredge by Polk County was without experimental reservation, and that the Curcie Bros., Inc., and the Polk County dredges were merely two of many manufactured and sold by Milne more than one year prior to the dates of his patent applications. The defendant's strong, unrebutted evidence of prior sale and use compels the conclusion that the patents are invalid.

The patents are also invalid because the invention and design were described in a printed publication more than a year prior to the dates of the patent applications. In August, 1956, Milne paid a Chicago, Illinois, firm to design an advertising brochure known as "Bulletin 655." It was printed on September 14, 1956, and reprinted on January 26, 1957, and May 14, 1959. Each printing pro-

---

2. In 1955, Milne applied for a patent on a dredge embodying the earlier ladder design but this application was abandoned in 1957.

duced more than five thousand copies. This eight-page brochure contains copy describing the features of the dredge, various photographs of the dredge in operation and disassembled for transit, a "close-up" photograph of the ladder and cutting head assembly, and a two-page "cutaway" drawing showing the internal features of the dredge. It was mailed to prospective buyers, including Polk County, Florida, and also distributed at the 1957 "Road Show" of construction machinery, where one of Milne's dredges was placed on public display. The "Road Show" was held from January 28 to February 2, 1957. Magazine articles and advertisements [3] urged persons interested in the dredge to write for "Bulletin 655."

Description of an invention appearing in a printed publication more than one year prior to the date of the patent application will invalidate the patent if the description is sufficient to enable one skilled in the art to reproduce the invention without resort to the patent. Bros Incorporated v. Browning Manufacturing Co., 317 F.2d 413 (8th Cir. 1963). The photographs in "Bulletin 655," particularly the "close-up" of the ladder and cutting head assembly, clearly reveal that the center of the cutting head lies substantially on the axis of the ladder and that the axes of the motor and cutting head are angled at about 20° to the axis of the ladder. The two-page "cutaway" drawing in "Bulletin 655," which apparently is the same drawing that appears on page 3 of the mechanical patent, reveals that the suction pipe is located protectively within the side framework of the ladder. Engineering expertise is not required to realize that the unique positioning of the motor, suction pipe and cutting head, having been disclosed in "Bulletin 655," could be reproduced merely by mechanical fabrication.

Design patents are also rendered invalid when the design is disclosed in a printed publication more than a year before the date of the patent application. 35 U.S.C. § 171. The fact that "Bulletin 655" disclosed the ornamental design of the Milne dredge is established by the evidence that "Bulletin 655" was submitted with the application for the design patent in order to clarify the drawings of the dredge.

Upon consideration, therefore, the court is of the opinion that patents No. 3,005,273 and No. Des. 188,477 are invalid because the invention and the design were disclosed in a printed publication and, in addition, were on sale and in public use in this country more than one year prior to the dates of the patent applications.

An order consistent with this opinion will be submitted within ten days.

---

3. These articles and advertisements also described the dredge but with less detail than "Bulletin 655." The court has made no findings concerning whether these articles and advertisements were nevertheless sufficiently descriptive to invalidate the patents.